IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

MARCELLUS A. JONES,                    :
                                       :
          Plaintiff                    :
                                       :
     v.                                :     CIVIL NO. 4:CV-13-1400
                                       :
JOHN WETZEL, ET AL.,                   :     (Judge Brann)
                                       :
          Defendants                   :

**MEMORANDUM**

January 27, 2014

**Background**

This pro se civil rights action pursuant to 42 U.S.C. § 1983 was filed by

Marcellus A. Jones, an inmate presently confined at the State Correctional

Institution, Huntingdon, Pennsylvania (SCI-Huntingdon).  Service of the

Complaint was previously ordered.

Named as Defendants are Secretary John Wetzel and Chief Grievance

Officer Dorina Varner of the Pennsylvania Department of Corrections (DOC).

The Plaintiff is also proceeding against the following SCI-Huntingdon officials:

Superintendent Tabb Bickell; Medical Supervisor Mary Lou Showalter;  Captains

Kevin Walters and Brian Harris; Lieutenant David Fogle; as well as Correctional

Officers (COs) Kenneth Boal, Michael Long, Joseph Cherry, and James Nelson.

According to the Complaint, during the week of May 9, 2011, Plaintiff was housed in the SCI-Huntingdon Restricted Housing Unit (RHU).  During this time period, Jones was allegedly denied basis hygiene products by CO Boal.  After requesting to speak to a Lieutenant regarding that deprivation, Defendant Fogle informed Plaintiff that he would not be given any hygiene supplies and that if he continued to complain he would be pepper sprayed.[1]

Jones admittedly responded by covering his cell door with his towel in an effort to have an on duty supervisor address his complaint.  In response, Lieutenant Fogle purportedly ordered COs Boal, Long, Cherry and Nelson to spray Plaintiff with "excessive amounts" of pepper spray.[2]  Doc. 1, ¶ IV (1).  This action was purportedly undertaken despite the knowledge that Jones has a severe asthmatic condition and mental health issues.   It is also generally alleged that Defendants Bickell, Showlater, Walters, and Harris approved the use of pepper spray.

---

[1]   It is asserted that Fogle threatened Jones that he would be "painted orange" a term which apparently refers to a heavy use of pepper spray.  Id. at ¶ 16.

[2]   The Complaint indicates that this incident happened on or about May 14, 2011.  It is also asserted that at the time, Plaintiff was under the effect of psychotropic medication for his mental health issues.

Plaintiff states that he was overwhelmed by the pepper spray and eventually rendered unconscious.[3]  Inmate Jones was then allegedly carried naked through the RHU in front of other prisoners and female medical staff by Defendants Long, Fogle, Cherry, Boal and Nelson.  The Complaint describes this transport of the naked Plaintiff as being an intentional attempt to humiliate and traumatized the prisoner.

In addition to alleging that the purported conduct of the Defendants violated his constitutional rights, Plaintiff also raises claims of negligence and violation of the Americans with Disabilities Act (ADA).  See id. at ¶ 28.  The Complaint seeks injunctive and declaratory relief as well as compensatory and punitive damages. See id. at ¶ V.

Defendants responded to the Complaint by submitting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  See Doc. 11.  Although having been allotted an abundance of time in which to do so, Plaintiff has not responded to Defendants' motion.  Accordingly, the motion to dismiss will be deemed unopposed.  See M.D. Pa. Local Rule 7.5

---

[3]   Plaintiff also describes his condition as being comatose and semi-conscious.

3

**Discussion**

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  When ruling on a motion to dismiss under  Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  A plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action.  Id. at 556.  A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, ___ U.S. ____ , 129 S.Ct 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Iqbal, 129 S.Ct. at 1949.  Legal conclusions must be supported by factual allegations and the

4

complaint must state a plausible claim for relief.  See id. at 1950.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Twombly, at 555.  The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  Id. at 562; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action).  Additionally, pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972).

## Official Capacities

Defendants contend that the claims for monetary damages against the individual Defendants in their official capacities are barred by the Eleventh Amendment.  See Doc. 12, p. 13.

The Eleventh Amendment bars all suits against a state and its agencies in federal court that seek monetary damages.  Walker v. Beard, 244 Fed. Appx. 439, 440 (3d Cir. 2007); see also A.W. v. Jersey City Public Schools, 341 F.3d 234,

238 (3d Cir. 2003).  Likewise, suits brought against state officials acting in their

official capacities are to be treated as suits against the employing government

agency.  Garden State Elec. Inspection Serv. v. Levin, 144 Fed. Appx. 247, 251

(3d Cir. 2005).  As such, Jones' damage claims brought against the individual

Defendants in their official capacities are considered to be against the state itself

and are barred by the Eleventh Amendment.[4]

## Personal Involvement

Defendants' motion contends that Defendants Wetzel, Varner, Bickell,

Showalter, Walters, and Harris are entitled to entry of dismissal on the basis of

lack of personal involvement.  See Doc. 12, p. 11.  It is asserted that the Complaint

does not raise any contention that those officials were personally involved in any

civil rights violations and that they are being named as Defendants solely on the

basis of their respective supervisory positions.

A plaintiff, in order to state an actionable civil rights claim, must plead two

essential elements:  (1) that the conduct complained of was committed by a person

acting under color of law, and (2) that said conduct deprived the plaintiff of a

---

[4]   To the extent that Plaintiff is seeking injunctive and declaratory relief against the individual defendants in their official capacities, such requests are not barred by the Eleventh Amendment.  See Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002).

right, privilege, or immunity secured by the Constitution or laws of the United

States.  See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995);

Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under § 1983 cannot be

premised on a theory of respondeat superior.  Rode v. Dellarciprete, 845 F.2d

1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the

complaint's allegations, to have been personally involved in the events or

occurrences which underlie a claim.  See Rizzo v. Goode, 423 U.S. 362 (1976);

Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).  As

explained in Rode:

> A defendant in a civil rights action must have personal
> involvement in the alleged wrongs. . . .  [P]ersonal involvement
> can be shown through allegations of personal direction or of
> actual knowledge and acquiescence.  Allegations of
> participation or actual knowledge and acquiescence, however,
> must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Inmates also do not enjoy a constitutional right to a prison grievance system.

See Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138 (1977);

Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30,

2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he

existence of a prison grievance procedure confers no liberty interest on a prisoner"). Consequently, any attempt by Plaintiff to establish liability against any correctional official solely based upon the substance or lack of response to his institutional grievances does not by itself support a constitutional due process claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

With respect to Superintendent Wetzel and Chief Grievance Officer Varner, a review of the Complaint confirms that other then being listed as Defendants there are no specific assertions that either of those Defendants had any personal involvement in the purported violations of Plaintiff's rights under the Eighth Amendment. Rather, the claims asserted against those two (2) Defendants are premised either upon their respective supervisory positions within the DOC or their handling of Plaintiff's subsequent institutional grievances and complaints. Based upon an application of the above standards, such allegations are insufficient to satisfy the personal involvement requirement standard of Rode. Accordingly,

Defendants Wetzel and Varner are entitled to entry of dismissal.

The Complaint includes a vague allegation that Bickell, Showalter, Walters, and Harris approved and authorized the use of pepper spray in deliberate indifference to Plaintiff's asthmatic condition.  <u>See</u>  Doc. 1 ¶ IV(1) &(2).  Later in his Complaint, Jones asserts that Defendants Bickell, Walters, Showalter and Harris "gave their approval [for the use of pepper spray] thru silent consent."  <u>Id</u>. at ¶ 28.  However, there is also a separate averment that Medical Supervisor Showalter approved the usage of pepper spray against Jones.  <u>See id</u>. at ¶ 22.

 Despite the liberal treatment afforded to <u>pro se</u> litigants, Jones' sparse and speculative allegations against Bickell, Walters, and Harris are insufficient to allege personal involvement by those Defendants in the purported use of excessive force.  There are simply no facts alleged which could support a claim that Bickell, Walters, and Harris either gave advance approval or even had any knowledge that pepper spray was to be used against Inmate Jones.  The unopposed request for dismissal in favor of Defendants Bickell, Walters, and Harris on the basis of lack of personal involvement will be granted.

However,  there is a separate averment which given the liberal treatment afforded to <u>pro se</u> pleadings, arguably asserts that Medical Supervisor Showalter approved the use of pepper spray against Jones despite his asthmatic condition.  It

is the conclusion of this Court that said averment sufficiently alleges personal involvement by Showalter in approval of the alleged use of excessive force sufficient to withstand scrutiny under Rule 12(b)(6).  Showalter's request for dismissal on the basis of lack of personal involvement will be denied at this juncture.

## Excessive Force

Plaintiff alleges that the use of pepper spray against him by Defendants Long, Fogle, Cherry, Boal and Nelson constituted an excessive use of force.  He adds that Showlater 's approval of pepper spray in his case was also improper.  The Complaint asserts that an excessive amount of pepper spray was used and that the chemical agent should not have been employed at all because of Jones' asthmatic and mental health condition.

Defendants argue that an actionable excessive force claim has not been stated because the actions taken by the correctional staff were appropriate since Jones admittedly covered his cell door with his towel after being warned that he would be disciplined unless he ceased his disruptive behavior.  See Doc. 12, p. 7. They point out that there is no allegation the Defendants involved in the incident were aware that Plaintiff suffers from asthma and takes psychotropic medications or that Jones suffered any injury other than minor discomfort.  Furthermore,

Defendants contend that carrying Plaintiff out of the RHU was not unconstitutional because it denotes that Jones was combative and non-cooperative.[5]

In order to constitute cruel and unusual punishment, a correctional officer's use of force must constitute "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize[s] that conduct prohibited by the Cruel and Unusual Punishment Clause, whether the conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id.

The United States Supreme Court subsequently recognized that the use of force may constitute cruel and unusual punishment even if the prisoner does not sustain "significant" injuries. Hudson v. McMillian, 503 U.S. 1, 9 (1992). Courts must determine "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir.), cert. denied, 531 U.S. 821(2000); Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000)(even a de minimis use of force, if

---

[5] It is noted that in support of their argument, Defendants partially rely on decisions, which unlike the present matter, regard disposition of summary judgment motions and/or are not binding on this Court.

repugnant to the conscience of mankind, may be constitutionally significant).  As

explained in <u>Fuentes</u>:

> Resolution of an Eighth Amendment claim therefore 'mandate[s] an inquiry into a prison official's state of mind.'  Two considerations define that inquiry.  We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections.  If not, our inquiry is at an end.  However, if the deprivation is sufficiently serious, we must determine if the officials acted with a sufficiently culpable state of mind.  In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain.  'What is necessary to establish an "unnecessary and wanton infliction of pain. . ." varies according to the nature of the alleged constitutional violation.'

206 F.3d at 344.

The absence of significant injury does not defeat an Eighth Amendment

claim in the context of use of force.[6]  Rather, the pertinent inquiry is whether the

actions of the prison officials "taken contextually, do not comport with

'contemporary standards of decency.'" <u>Concepcion v. Morton</u>, 125 F.Supp. 2d

111, 123 (D.N.J. 2000).   <u>See</u> <u>also</u> <u>Wilson v. Horn</u>, 971 F. Supp. 943, 948 (E.D. Pa.

---

[6] Although not dispositive, the degree or lack of injury is still a relevant factor in the determination of the excessiveness of the force used.  <u>See</u> <u>Brooks</u>, 204 F.3d at 106.  However, it would be erroneous to narrow the inquiry to the absence of serious injuries.  <u>See</u> <u>Smith v. Mensinger</u>, No. 99-1382, 2002 WL 1283688 * 5 (3d. Cir. June 11, 2002).

1997)(a plaintiff must establish that the force was applied maliciously and sadistically, instead of in good faith).   Accordingly,  Defendants' argument that Plaintiff only suffered <u>de minimis</u> injury is not relevant as to whether an excessive i force claim sufficient to withstand scrutiny under Rule 12(b)(6) has been stated.

The use of mace-type sprays by correctional officials has been found to be constitutionally acceptable under certain circumstances.  <u>See</u> <u>Banks v. Mozingo</u>, 423 Fed. Appx. 123, 126  (3d Cir. 2011); <u>Travillion v. Leon</u>, 248 Fed. Appx. 3563 (3d Cir. 2007).   Defendants contend that the use of pepper spray was an appropriate response after Plaintiff covered upn his cell door with a towel.

However, the Complaint clearly alleges that Plaintiff was threatened with pepper spray before he covered up in his cell door.   This Court has not yet been provided with specific details by the defendants setting forth their reasons behind the alleged decision to employ pepper spray in Jones' case.  Since there is no indication that Plaintiff was involved in any type of physical altercation or excessive behavior immediately prior to employment of the pepper spray, the Complaint could conceivably be viewed as contenting that Defendants engaged in an aggravated, punitive response to Plaintiff's refusal to cease complaining about his failure to receive hygiene supplies, an allegation which could if proven could arguably rise to the level of a constitutional violation.

13

Accordingly, since the Court has not been presented with any facts showing that the use of the pepper spray was justified and non-excessive under the circumstances, Defendants Showalter, Long, Fogle, Cherry, Boal and Nelson's request for dismissal of the excessive force claim under Rule 12(b)(6) will be denied.

**Conditions of Confinement**

Plaintiff alleges that the events at issue were precipitated when he was denied personal hygiene products by Defendants Boal and Fogle.  See Doc. 1, ¶ 16. The personal hygiene products are not identified or otherwise described in the Complaint.  Defendants contend that "[t]o the extent that Jones allegations constitute an Eighth Amendment claim based upon allegedly being denied human necessities, his claim fails."  Doc. 12, p. 4.

In order to state a viable Eighth Amendment claim, an inmate Plaintiff must allege that a condition of confinement is so reprehensible as to be deemed inhumane under contemporary standards or one that deprives an inmate of minimal civilized measure of the necessities of life.  See  Wilson v. Seiter, 501 U.S. 294, 298 (1991).

The prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food,

clothing, shelter, sanitation, medical care and personal safety.  See Farmer v.

Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993).

Prison conditions may amount to cruel and unusual punishment if they cause

"unquestioned and serious deprivations of basic human needs ... [that] deprive

inmates of the minimal civilized measure of life's necessities." Tillman v.

Lebanon County Correctional Facility, 221 F.3d 410 (3d Cir. 2000).

An Eighth Amendment claim against a prison official must meet two

requirements:  (1) "the deprivation alleged must be, objectively, sufficiently

serious;" and (2) the "prison official must have a sufficiently culpable state of

mind."[7]  Farmer, 511 U.S. at 834 (1994).  In prison conditions cases, "that state of

mind is one of 'deliberate indifference' to inmate health or safety." Id.  In

reviewing conditions of confinement claims, courts have stressed that the duration

of the complainant's exposure to the alleged unconstitutional conditions and the

"totality of the circumstances" are critical to a finding of cruel and inhumane

------------------------------

[7]    Under Farmer, deliberate indifference is a subjective standard in that the
prison official must actually have known or been aware of the excessive risk to inmate
safety.  Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir. 2001).  This
requirement of actual knowledge means that "the official must both be aware of facts
from which the inference could be drawn that a substantial risk of serious harm exists,
and he must also draw the inference." Farmer, 511 U.S. at 837.

treatment.

Plaintiff alleges that he was denied a delivery of unidentified hygiene products.  There is no assertion that due to that alleged occurrence he either sustained any harm or was left without the ability to attend to any specific personal hygiene need.  Moreover, there is no contention that Jones was deprived of personal hygiene products for a prolonged period of time or that the denial of hygiene products occurred more than on the single date referenced in the Complaint.  It also appears that the purported denial of hygiene products is mentioned in the Complaint solely because it led to the purported use of excessive force which is at the core of this matter.

Given the above considerations and noting that the argument for dismissal is unopposed, it is apparent that Plaintiff has not set a viable claim that he was subjected to unconstitutional conditions of confinement because he failed to receive a single delivery of personal hygiene products.

## Conspiracy

The Complaint includes an assertion that "a 'special relationship' exist between John Wetzel, Dorina Varner, Tabb Bickell, Mary Lou Showalter, K. Walters Harris these officials were charged a duty ensuring a safe prison environment."  Doc. 1, ¶ 27.  Defendants contend that neither this averment nor

any other portion of the Complaint sets forth a viable claim of conspiracy.

In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations.  D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992), cert. denied, 506 U.S. 1079 (1993); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989); Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989).  The Third Circuit Court of Appeals has further noted that "[a] conspiracy claim must . . . contain supportive factual allegations." Rose, 871 F.2d at 366.  Moreover, "[t]o plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose."  Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir. 1989).

The essence of a conspiracy is an agreement or concerted action between individuals.  See D.R. by L.R., 972 F.2d at 1377; Durre, 869 F.2d at 545. Consequently, a plaintiff must allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right.  Id.; Rose, 871 F.2d at 366; Young, 926 F.2d at 1405 n.16; Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 539 (E.D. Pa. 1982).

Where a civil rights conspiracy is alleged, there must be some specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity.  Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985).  A plaintiff cannot rely on subjective suspicions and unsupported speculation.  Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991).

Based upon a review of the complaint, especially the bald "special relationship" averment, there are simply no averments of fact that reasonably suggest the presence of an agreement or concerted activity between Defendants to violate Jones' civil rights. Dismissal will be granted in favor of Defendants to the extent that the Complaint is attempting to raise a claim of conspiracy.

**ADA**

The Complaint includes a vague assertion that because the Plaintiff has a mental health problem, Defendants' actions constituted a violation of the ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity."  42 U.S.C. § 12132.[8]  The ADA seeks

---

[8] The regulations implementing the ADA define a "qualified individual with a
(continued...)

"to assure even handed treatment and the opportunity for [disabled] individuals to participate in and benefit from programs [receiving financial assistance]. Southeastern Community College v. Davis, 442 U.S. 397 (1979).[9] . P.C. v. McLaughlin, 913 F.2d 1033, 1041 (2d Cir. 1990).

It has been recognized that the provisions of the ADA are applicable to prisoners confined in state correctional institutions.  See Pa. Dept. of Corrections v. Yeskey, 524 U.S. 206 (1998).

Based upon a liberal construction of the Complaint, Plaintiff has not sufficiently demonstrated that he is disabled for purposes of the ADA.  Second, the alleged conduct by the Defendants does not set forth a viable basis for a claim that Plaintiff was subjected to discrimination on the basis of any disability.

---

[8](...continued)
disability" as:
>"An individual with a disability who, with or without reasonable modifications to rules, policies or practices, . . . meets the essential eligibility requirements for the . . . participation in programs or activities provided by a public entity."

28 C.F.R. § 35.104 (1993).

[9]   The "evenhanded treatment" requirement does not, however, impose an affirmative obligation on public entities to expand existing programs but only that disabled individuals receive the same treatment as those who are not disabled.

Accordingly, the Court will <u>sua</u> <u>sponte</u> dismiss Jones' ADA claim.[10]

**<u>Negligence</u>**

Plaintiff also generally contends that the alleged use of pepper spray against him constituted negligence since Defendants were aware that he suffers from an asthmatic condition.

It is well settled that claims which sound in negligence do not expose a defendant to liability under § 1983.  <u>See</u> <u>Davidson v. Cannon</u>, 474 U.S. 344, 347-48 (1986).  Simply put, allegations of negligence "do not trigger constitutional protections."  <u>Whooten v. Bussanich</u>, No. 07-1441, slip op. at 4 (3d Cir. Sept. 12, 2007)(citation omitted). [11]

Although Defendants' pending motion does not seek dismissal of Jones' negligence claim it is also subject to <u>sua</u> <u>sponte</u> dismissal under <u>Davidson</u>.   An appropriate Order will enter.

---

[10]  Where, as here, a plaintiff has been granted leave to proceed <u>in forma pauperis</u>, a district court may dismiss a claim which is malicious, presents an indisputably meritless legal theory, or is predicated on clearly baseless factual contentions.  <u>Neitzke v. Williams</u>, 490 U.S. 319, 327-28 (1989), <u>Douris v. Middleton Township</u>, 293 Fed. Appx. 130, 132 (3d Cir. 2008).

[11]  There is no discernible request by Plaintiff that this Court exercise supplemental jurisdiction over a state law negligence claim.  <u>See</u> 28 U.S.C. § 1367

BY THE COURT:

s/Matthew W. Brann
Matthew W. Brann
United States District Judge