## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARCELLUS A. JONES, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | No.: 4:13-CV-1400 |
| | : | |
| JOHN WETZEL, ET AL., | : | (Judge Brann) |
| | : | |
| Defendants | : | |

## MEMORANDUM OPINION

### SEPTEMBER 27, 2017

## I.    BACKGROUND

This *pro se* civil rights action pursuant to 42 U.S.C. § 1983 was filed by

Marcellus A. Jones, an inmate presently confined at the Greene State Correctional

Institution, Waynesburg, Pennsylvania (SCI-Greene).  Remaining Defendants are

the following officials at Plaintiff's prior place of confinement the State

Correctional Institution, Huntingdon, Pennsylvania (SCI-Huntingdon):  Medical

Supervisor Mary Lou Showalter;  Lieutenant David Fogle;  Correctional Officers

(COs) Kenneth Boal; Michael Long; Joseph Cherry; and James Nelson.

By Memorandum and Order dated January 27, 2014, Defendants' unopposed

motion to dismiss was partially granted.  *See*  Doc. 14.  Specifically, Jones'

damage claims against the individual Defendants in their official capacities were

dismissed as being barred by the Eleventh Amendment. In addition, Superintendent Wetzel, Chief Grievance Officer Varner, Superintendent Bickell, Captains Walters, and Harris were granted entry of dismissal on the basis of lack of personal involvement. Dismissal was also granted with respect to Plaintiff's claims of denial of personal hygiene products, conspiracy, violation of the ADA and negligence. However, the excessive force claims against Defendants Showalter, Long, Fogle, Cherry, Boal and Nelson were allowed to proceed.

According to the Complaint, during the week of May 9, 2011, Plaintiff was housed in the SCI-Huntingdon Restricted Housing Unit (RHU). In response to a request form Jones, Lieutenant Fogle informed the inmate that he would not be given any hygiene supplies and if he continued to complain he would be "painted orange" a term which apparently refers to a heavy use of pepper spray. Doc. 1, ¶ 16.

Jones admits that he then covered his cell door with a towel in violation of prison rules in an effort to have an on duty supervisor address his complaint. Jones contends that at the time of the incident he was under the effect of psychotropic medication for mental health issues.

Lieutenant Fogle purportedly responded by ordering COs Boal, Long, Cherry and Nelson to spray Plaintiff with "excessive amounts" of OC spray.[1] *Id.* at ¶ IV (1). This action was purportedly undertaken despite the knowledge that Jones has a severe asthmatic condition and mental health issues. It is also generally alleged that Defendant Showalter approved the use of OC spray. Jones claims that he was overwhelmed by the chemical spray and eventually rendered unconscious.[2] The Plaintiff seeks injunctive and declaratory relief as well as compensatory and punitive damages.

Presently pending is a motion for summary judgment filed by the Remaining Defendants. *See* Doc. 107. Jones has responded to the motion by filing three discovery related motions. The motions are also ripe for consideration.

## II.    PLAINTIFF'S MOTIONS

### A.    Motion to Reopen Discovery

Plaintiff has filed a one sentence motion to reopen discovery. *See* Doc. 131. The motion is not accompanied by a supporting brief.

M.D. Pa. Local Rule 7.5 requires that a party who files a pretrial motion submit a brief in support of said motion within fourteen (14) days of its being filed

---

[1] The incident occurred on or about May 14, 2011. The chemical used was Oleoresin Capsicum (OC).

[2] Plaintiff also describes his condition as being comatose and semi-conscious.

with the Court. If a supporting brief is not timely filed, "such motion shall be deemed to be withdrawn."

It is also noted that Jones' motion does not identify any additional discovery that he wishes to conduct. The Plaintiff provides no explanation as to why he was previously unable to complete discovery despite having been granted ample time to do so. Based upon those considerations, the motion to reopen discovery is denied.

## B.    Motion to Compel

Jones has additionally submitted a motion to compel discovery (Doc. 126) which raises unrelated claims of constitutional misconduct pertaining to his SCI-Green confinement. The motion added that he was without pen, paper and envelopes and is without documents, including his copies of previously provided discovery materials, need to pursue this matter. His motion also requests that he be provided with a personal computer. The remainder of the motion seeks additional discovery from the Remaining Defendants.

It is initially noted that any claims of misconduct by SCI-Greene officials are not properly raised before this Court but may be reasserted by Plaintiff in a new action before a court of proper jurisdiction. Second, following the filing of the motion to compel, Plaintiff filed two additional motions and a brief, actions which clearly undermine his assertion of being without pen, paper, and envelopes.

Third, there is no requirement that the government or a defendant has to pay

for an indigent plaintiff's litigation efforts.  Smith v. Yarrow, 78 Fed. Appx. 529, 544 (6th Cir.  2003).  For instance, prisoners have no right to free photocopying for use in lawsuits.  Johnson v. Moore, 948 F. 2d 517, 521 (9th Cir.  1991)("denial of free photocopying does not amount to a denial of access to the courts").  Simply put, neither this Court nor prison officials are constitutionally required to provide Jones with a computer for his personal use.

Fourth, any attempt by Plaintiff to engage in additional discovery is untimely.[3]  The record clearly shows that Remaining Defendants previously provided responses to all of Plaintiff's discovery since there is no claim in the pending motion that those responses were insufficient.  In addition, the Remaining Defendants point out that Plaintiff was previously provided with additional copies of the discovery responses after he previously complained that the initial copies were lost.  Furthermore, this Court has been provided with videotape footage of the incident at issue.  Based upon the above considerations, there is no basis upon which to grant the motion to compel.

---

[3]  It is noted that this action has been pending before this Court for over four years and Plaintiff has been affordable ample time to conduct discovery.  Although the *pro se* Plaintiff has been granted considerable lenience, this Court agrees with the Remaining Defendants' contention that Jones' eleventh hour assertion of requiring additional discovery is simply a delay tactic.

## C.    Motion for Sanctions

In this motion, Plaintiff requests that monetary sanctions be imposed against the Remaining Defendants for failure to provided him with requested discovery. *See* Doc. 132. It is initially noted that it is appropriate for this motion to be deemed withdrawn for Plaintiff's failure to file a supporting brief as required by M.D. Pa. Local Rule 7.5. Second, this Court has already determined that Remaining Defendants have cooperated in the discovery process. As such, there is no basis for the imposition for sanctions. The motion for sanctions is also denied.

## III.    SUMMARY JUDGMENT

Remaining Defendants claim entitlement to entry of summary judgment on the grounds that: (1) Plaintiff failed to exhaust his administrative remedies; (2) Defendant Showalter was not personally involved in any alleged constitutional misconduct; (3) the use of excessive force was a good faith attempt to restore order; and (4) Remaining Defendants are entitled to qualified immunity.

### A.    Standard of Review

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *See also Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit

under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis

that would allow a reasonable fact-finder to return a verdict for the non-moving

party.  *Id.* at 248.  The court must resolve all doubts as to the existence of a

genuine issue of material fact in favor of the non-moving party.  *Saldana*, 260 F.3d

at 232; *see also Reeder v. Sybron Transition Corp.,* 142 F.R.D. 607, 609 (M.D. Pa.

1992).  Unsubstantiated arguments made in briefs are not considered evidence of

asserted facts.  *Versarge v. Township of Clinton*, 984 F.2d 1359, 1370 (3d Cir.

1993).

Once the moving party has shown that there is an absence of evidence to

support the claims of the non-moving party, the non-moving party may not simply

sit back and rest on the allegations in its complaint.  *See Celotex Corp. v. Catrett,*

477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its]

own affidavits, or by the depositions, answers to interrogatories, and admissions on

file, designate specific facts showing that there is a genuine issue for trial."  *Id.*

(internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted).

Summary judgment should be granted where a party "fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and

on which that party will bear the burden at trial."  *Celotex,* 477 U.S. at 322-23.

"'Such affirmative evidence – regardless of whether it is direct or circumstantial –

must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

### B.     Personal Involvement

Remaining Defendants contend that Defendant Showalter is entitled to entry of summary judgment on the basis of lack of personal involvement. *See* Doc. 112, p. 20.  They assert that the undisputed record establishes that Showalter's only involvement was denying a post-incident grievance filed by Jones and therefore said Defendant was not involved in any of the alleged constitutional misconduct. Plaintiff has not opposed the argument.

As previously discussed by the January 27, 2014 Memorandum and Order, in order to state an actionable civil rights claim, a plaintiff must plead two essential elements:  (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of *respondeat superior*.  *Rode v. Dellarciprete*, 845 F.2d

1195, 1207 (3d Cir. 1988). Each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. *See Rizzo v. Goode*, 423 U.S. 362 (1976). As explained in *Rode*:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode*, 845 F.2d at 1207.

Furthermore, inmates do not enjoy a constitutional right to a prison grievance system. *See Jones v. North Carolina Prisoners Labor Union*, 433 U.S. 119, 137-138 (1977); *Speight v. Sims*, 283 Fed. Appx. 880, 881 (3d. Cir. 2008) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner"). Consequently, any attempt by Plaintiff to establish liability against any correctional official based solely upon the substance or lack of response to his institutional grievances does not by itself support a constitutional due process claim. *See also Alexander v. Gennarini*, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); *Pryor-El v. Kelly*, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure

does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

The Complaint here includes a vague allegation that Medical Supervisor Showalter approved and authorized the use of pepper spray in deliberate indifference to Plaintiff's asthmatic condition. *See* Doc. 1 ¶ IV(1) &(2). The Complaint later alleges asserts that Defendant Showalter and other officials gave "approval [for the use of pepper spray] thru silent consent." *Id*. at ¶ 28. There is also a claim that Showalter approved the usage of pepper spray against Jones. *See id.* at ¶ 22.

My January 27, 2014 Memorandum and Order concluded that in light of the liberal treatment afforded to *pro se* litigants, the allegation that Medical Supervisor Showalter approved the use of pepper spray against Jones despite his asthmatic condition was sufficient to withstand scrutiny on a motion to dismiss.

In support of their argument, Remaining Defendants have submitted a copy of a May 14, 2011 Extraordinary Occurrence Report which provides that the use of OC spray was authorized by Lieutenant Fogle and a a Shift Commander upon receiving medical clearance from Registered Nurse (RN) Price. Showalter is not listed in the report as having any involvement in the incident. *See* Doc. 109-1, p. 6. Also submitted is a declaration under penalty of perjury by Lieutenant Fogle, who, likewise, states that the decision was made by the Shift Commander and Fogle and

upon medical clearance by RN Price.  *See* Doc. 109-3, ¶ 12.  Finally based upon a review of the videotape of the briefing conducted prior to the use of OC spray there is likewise no indication that medical Supervisor Showalter was involved in the decision making.  *See* Doc. 107, Exhibit B.

Considering the undisputed supporting materials submitted by the Remaining Defendants, it is clear that the only involvement by Showalter was her review of a post incident grievance filed by the Plaintiff.  Under the standards set forth in *Alexander, supra.*, such involvement in a post-incident grievance process is not a sufficient basis to establish § 1983 liability against the Medical Supervisor. Summary judgment will be granted in favor of Defendant Showalter on the basis of lack of personal involvement.

### C.    Administrative Exhaustion

Remaining Defendants next argue that since Jones failed to properly exhaust his administrative remedies, entry of summary judgment on the basis of non-exhaustion is appropriate.  *See* Doc. 112, p. 21.   Specifically, it is argued that Jones failed to timely appeal the denial of his grievance appeals to the final level of the Pennsylvania Department of Corrections (DOC)  administrative review system.

Section 1997e(a) of title 42 U.S.C. provides:

> No action shall be brought with respect to prison
> conditions under Section 1979 of the Revised Statutes of
> the United States (42 U.S.C. 1983), or any other federal
> law, by a prisoner confined in any jail, prison, or other
> correctional facility until such administrative remedies as
> are available are exhausted.

Under that provision, administrative exhaustion is required in "all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 n. 6 (2001). Claims for monetary relief are not excused from the exhaustion requirement. *Nyhuis v. Reno*, 204 F.3d 65, 74 (3d Cir. 2000). Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. *Ahmed v. Sromovski*, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur prior to filing suit, not while the suit is pending." *Tribe v. Harvey*, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999)); *Oriakhi v. United States*, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

An inmate is not required to specifically plead or demonstrate exhaustion in his or her complaint. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *see also Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002)(a prisoner does not have to allege in his complaint that he has exhausted administrative remedies). Rather, pursuant to the standards announced in *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997), it is

the burden of a defendant asserting the defense of non-exhaustion to plead and

prove it.[4]  The United States Supreme Court in *Jones* noted that the primary

purpose of the exhaustion requirement is to allow prison officials to address

complaints before being subjected to suit, reducing litigation to the extent

complaints are satisfactorily resolved, and improving litigation that does occur by

leading to the preparation of a useful record.

   The administrative exhaustion mandate also implies a procedural default

component.  *Spruill v. Gillis,* 372 F.3d 218, 222 (3d Cir. 2004).  As explained by

the Third Circuit, a procedural default rule "prevents an end-run around the

exhaustion requirement."  *Id*. at 230.  It also ensures "prisoner compliance with the

specific requirements of the grievance system" and encourages inmates to pursue

their administrative grievances "to the fullest."  *Id*.  Similarly, the Supreme Court

has observed that proper exhaustion of available administrative remedies is

mandatory, meaning that prisoners must comply with the grievance system's

procedural rules, including time limitations.  *Woodford v. Ngo*, 548 U.S. 81 (2006).

---

[4] In *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003), the United States Court of Appeals for
the Third Circuit similarly stated that "[f]ailure to exhaust administrative remedies is an
affirmative defense for the defendant to plead."

Furthermore, the Third Circuit has recognized that "[t]here is no futility exception" to the exhaustion requirement. *Brown v. Croak*, 312 F.3d 109, 112 (3d Cir. 2002) (citing *Nyhuis*, 204 F.3d at 75). A subsequent decision reiterated its "no futility" exception by rejecting an inmate's argument that exhaustion should be excused because prisoner grievances were regularly rejected. *Hill v. Smith*, 186 Fed. Appx. 271, 274 (3d Cir. 2006). "[S]ensitive subject matter or 'fear of retaliation' as a basis for excusing a prisoner's failure to exhaust" have also been rejected. *Pena-Ruiz v. Solorzano*, 281 Fed. Appx. 110, 113 (3d Cir. 2008).

A Consolidated Inmate Grievance Review System has been established by the Pennsylvania Department of Corrections (DOC").[5] A copy of the policy has been submitted in support of Remaining Defendants' non-exhaustion argument. Section III of DC-ADM 804 (effective December 8, 2010) states that "every individual committed to its custody shall have access to a formal procedure through which to seek resolution of problems or other issues of concern arising during the course of confinement." *See* Doc. 109-4, Exhibit E, ¶ III. It adds that the formal procedure shall be known as the Inmate Grievance System and provides a forum of review and two (2) avenues of appeal. Section I ("Grievances & Initial Review") of DC-ADM 804 provides that, after attempted informal resolution of the

---

[5] While the DOC's grievance system has been periodically amended, the three tiered appeal system was in effect throughout the relevant period of Plaintiff's SCI-Huntingdon confinement.

problem, a written grievance may be submitted to the Facility Grievance Coordinator within fifteen (15) working days after the events upon which the claims are based but allowances of extensions of time will be granted under certain circumstances. A rejected grievance may be resubmitted within five (5) working days of the rejection notice date.

An appeal from the Grievance Coordinator's Initial Review decision may be made in writing within fifteen (15) working days to the Facility Manager or Superintendent. A final written appeal may be presented within fifteen (15) working days to the Secretary's Office of Inmate Grievances and Appeals (SOIGA). A prisoner, in seeking review through the DOC grievance system, may include reasonable requests for compensation or other legal relief normally available from a court. However, an improperly submitted grievance will not be reviewed.

In support of their non-exhaustion argument, Remaining Defendants have submitted a declaration under penalty of perjury by SOIGA Assistant Chief Grievance Officer Keri Moore. *See* Doc. 109-10. Moore acknowledges that based upon her review of of the SOIGA grievance tracking system, Jones filed Grievance No. 365101 regarding the use of OC spray at issue. After an appeal of that grievance was denied by Facility Manager on July 1, 2011, Jones was granted an extension of time in which to file a SOIGA appeal. However, Jones failed to

timely do so and his untimely SOIGA appeal was then rejected on October 13, 2011. *See id.* at ¶ 25.

Moore acknowledges that on May 20, 2011 Plaintiff filed a second Grievance No 366164 regarding the effect the OC spray had on his health. This grievance was denied by Defendant Showalter as being frivolous. An appeal of that grievance to the Superintendent was rejected as being untimely. Although granted an extension of time to file an appeal to SOIGA, Jones failed to timely file an appeal. Accompanying Moore's declaration are copies of the relevant grievances and related documents.

Plaintiff has not filed a response not otherwise disputed the non-exhaustion argument. The undisputed record therefore establishes first, that the DOC had an established grievance procedure in place during the relevant time period. Second, Jones failed to file a proper SOIGA final administrative appeal relating to any of his surviving claims against the Remaining Defendants. The Remaining Defendants' undisputed evidence satisfies their burden of establishing that Jones did not properly exhaust this available DOC administrative remedy prior to initiating this action. Specifically, none of Jones' relevant grievances were accepted for final administrative review by SOIGA.

Based upon those factors, as well as Plaintiff's failure to provide a viable reason to excuse his failure to exhaust or to even respond to this argument, a

finding of non-exhaustion and entry of summary judgment in favor of the Remaining Defendants under the well-settled *Spruill* and *Woodford* standards is appropriate.

### D. Excessive Force

Since it has been determined that Jones did not exhaust his available administrative remedies with respect to any of his pending claims, it is not necessary to address the Defendants' additional arguments for summary judgment. Even assuming *arguendo* that Jones either satisfied or should be excused from the exhaustion requirement, entry of summary judgment is still appropriate with respect to the excessive force claim.

Plaintiff alleges that the use of OC spray against him by Defendants Long, Fogle, Cherry, Boal and Nelson constituted an excessive use of force. Remaining Defendants argue that entry of summary judgment is appropriate because they did not act maliciously or sadistically in employing OC spray. Rather, the use of the chemical agent was made in a good faith attempt to restore order after the inmate admittedly covered his cell door with his towel and refused to comply with multiple orders (despite being warned continued non-compliance would result in the use of OC spray.)[6] *See* Doc. 112, p. 13. As previously noted, Plaintiff has not

---

[6] The Plaintiff also contends that he was carried naked through the RHU after being sprayed with OC spray. However, the videotape of the incident clearly shows that the Plaintiff was removed from his cell while still dressed. When his clothing was removed in the shower area ,

addressed this summary judgment argument.

This Court's January 27, 2014 Memorandum and Order correctly noted that in order to constitute cruel and unusual punishment, a correctional officer's use of force must constitute "unnecessary and wanton infliction of pain.*" Whitley v. Albers*, 475 U.S. 312, 319 (1986). The use of force may constitute cruel and unusual punishment even if the prisoner does not sustain "significant" injury. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).[7]

Courts must determine "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." *Fuentes v. Wagner*, 206 F.3d 335, 345 (3d Cir. 2000); *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000)(even a *de minimis* use of force, if repugnant to the conscience of mankind, may be constitutionally significant). The Third Circuit has established the appropriate standard of review:

> Resolution of an Eighth Amendment claim therefore 'mandate[s] an inquiry into a prison official's state of mind.' Two considerations define that inquiry. We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. If not, our inquiry is at an end. However, if

Jones was covered with a smock before being taken to his new cell. Thus, the allegation that Jones was intentionally carried naked through the RHU is meritless.

[7] The degree or lack of injury is still a relevant factor in the determination of the excessiveness of the force used. *See Brooks*, 204 F.3d at 106. However, it would be erroneous to narrow the inquiry to the absence of serious injuries. *See Smith v. Mensinger*, 293 F.3d 641, 649 (3d. Cir. 2002).

the deprivation is sufficiently serious, we must determine
if the officials acted with a sufficiently culpable state of
mind.  In other words, we must determine if they were
motivated by a desire to inflict unnecessary and wanton
pain.  'What is necessary to establish an "unnecessary
and wanton infliction of pain. . ." varies according to the
nature of the alleged constitutional violation.'

*Fuentes*, 206 F.3d at 344.

The pertinent inquiry is whether the actions of the prison officials "taken
contextually, do not comport with 'contemporary standards of decency.'"
*Concepcion v. Morton*, 125 F. Supp. 2d 111, 123 (D.N.J. 2000).  *See also Wilson
v. Horn*, 971 F. Supp. 943, 948 (E.D. Pa. 1997)(a plaintiff must establish that the
force was applied maliciously and sadistically, instead of in good faith).
Correctional officials' use of mace-type sprays by has been found to be
constitutionally acceptable under certain circumstances.  *See Banks v. Mozingo*,
423 Fed. Appx. 123, 126  (3d Cir. 2011); *Travillion v. Leon*, 248 Fed. Appx. 3563
(3d Cir. 2007).

In previously addressing Plaintiff's excessive force claim, my January 27,
2014 Memorandum and Order determined that because the Defendants had not
provided specific details setting forth their reasons behind the alleged decision to
employ OC spray in Jones' case, entry of dismissal was not then appropriate.  It
was noted that because there was no indication that Jones was involved in any type
of physical altercation or excessive behavior immediately prior to employment of

the OC spray, the Complaint could conceivably be viewed as contenting that Defendants engaged in an aggravated, punitive response.

In support of their pending summary judgment argument, however, Remaining Defendants have submitted a copy of a May 14, 2011 Extraordinary Occurrence Report. The report provides that on May 14, 2011 Jones refused to return his asthma inhaler and would not permit correctional staff to close the feeding aperture on his cell door. *See* Doc. 109-1, p. 3. Shortly thereafter, correctional officers who were conducting routine checks noticed that Jones had covered his door with items of personal property. The Plaintiff refused an order to remove the items.

The report adds that after Plaintiff refused several more orders to remove the items, RN Price was contacted and approved the use of OC spray. After further discussion with a staff negotiator were unsuccessful, the Shift Commander was notified and authorized the use of force, if necessary, to remove Plaintiff from his cell. Jones remained non-compliant after an initial burst of OC spray and several more orders and warnings. A second application was applied in an ineffective manner. Jones eventually agreed to comply with prison staff after a third burst.

Included in the report is a statement by RN D. Kos who was present when the OC spray was applies. Kos states after the spray was used Jones was yelling, talking without difficulty and did not appear to be out of breath. Kos adds Jones' vital signs were checked and the prisoner was then showered and decontaminated. *See id.* at p. 20. Also submitted is a completed form noting that Plaintiff was medically cleared for OC spray. *See* Doc. 109-2, p. 2.

Remaining Defendants have also provided a declaration under penalty of perjury by SCI-Huntingdon Lieutenant D. Fogle. *See* Doc. 109-3. Fogle describes the Plaintiff as having an extensive history of assaultive behavior against staff. On May 14, 2011, Fogle avers that Plaintiff covered his cell door preventing correctional officers from viewing the inside of his cell in violation of prison regulations. Fogle explains that inmates are not to be hidden from the view of correctional officers because it prevents staff from ensuring that they are not harming themselves or others, damaging the cell, or engaging in other prohibited activity.

According to Fogle, Plaintiff refused several orders to uncover his door. As a result, the Shift Commander authorized the use of force, if necessary, to remove Jones from his cell. After RN Price medically cleared Plaintiff for OC spray, Fogle gave Plaintiff at least five (5) more orders to uncover his door, all of which were disobeyed. Fogle then warned Jones that OC spray would be used unless he

complied; the prisoner thereafter refused three additional orders.

Fogle points out that since Jones was unrestrained and had his cell door covered, it would have been a danger for officers to just enter the cell since it could not be determined if the inmate was armed.[8]  At approximately 11:43 a.m. the first application of OC  was sprayed through a vent into Plaintiff's cell.  Jones was than ordered to come to the cell door to permit the placement of handcuffs and was warned that failure to comply would result in the spraying of additional OC.  When the prisoner again failed to comply, a second application of OC was sent through the aperture in the cell door; this proved ineffective because the OC can had to be held sideways.  A third application of OC, using a wand extension, was then used. Jones became compliant and at 11:54 a.m. correctional officers entered the cell. The Plaintiff's clothing removed and he was decontaminated.  Jones also underwent a medical assessment and was offered a shower which was refused. Fogle adds that the entire incident was videotaped.

Also submitted is a videotape of the entire incident from the assembly of a three person team at 11:37 a.m. until the placement of Jones in a new cell at 12:28 p.m.  *See* Doc. 109, Exhibit B.  The videotape corroborates the version of events set forth in the Extraordinary Occurrence Report and by Fogle's declaration.  It

---

[8]  The Court recognizes that the videotape shows that when the second and third OC bursts occurred the towel had been removed from the door and visibility was no longe an obstacle.

specifically shows that despite being given numerous orders and warnings from multiple members of the correctional staff Jones refused to uncover his door or even respond to the correctional officers on the scene. It is also clear that although the use of OC spray caused an asthma attack, the amount of spray used was only that which was necessary to permit the extraction of Plaintiff from his cell. Once Jones indicated that he would comply with the directives of prison staff, no further spray was used.

A declaration under penalty of perjury by Medical Records Supervisor Brenda Lucci has also been submitted for review. Lucci who states that the Plaintiff had been "specifically examined and evaluated for the use of OC spray in 2009 by a Physician's Assistant." *See* Doc. 109-5. The evaluation concluded that Plaintiff's asthma was not of such severity as to preclude the use of OC spray. Lucci adds that Plaintiff's subsequent medical records do not indicate any change which would have affected the medical clearance for OC spray.

The transcript of Plaintiff's deposition testimony confirms that Plaintiff had covered his cell door on the day in question and had been warned that he would be subjected to OC spray if the towel was not removed. *See* Doc. 109-11, p. 4. Jones added that he was not threatened with OC until he covered his door. *See id.* at p. 5. The inmate also indicated that because he was on a high dose of psychotropic medication during the relevant time period.

Based upon the abundance of undisputed supporting materials submitted by the Remaining Defendants, it is apparent that prior to using OC spray correctional officials acted properly by seeking medical clearance to use a chemical agent and engaged in repeated attempts to avoid the use of force, all of which were ignored by Jones. Since Jones himself created a potentially dangerous situation by covering his cell door and ignoring multiple warnings and directives which sought a peaceful resolution, prison staff acted in good faith.

The videotape and other supporting materials clearly undermine any potential determination that this was a malicious or sadistic use of force. Rather, the voluminous undisputed supporting evidence shows that OC spray was only used as a measure of last resort to deal with a non-responsive, unshackled inmate engaged in continued defiant violation of basic prison rules. Moreover, the use of OC spray was limited to that which was necessary to force Jones into compliant behavior while prison medical staff were present and consulted with during the entire event. The videotape could support a determination that Plaintiff suffered an asthma attack as a result of the OC spray. However, the inmate easily could have avoided any such outcome by merely agreeing to comply with any one of the multiple opportunities prison officials afforded him prior to the use of OC spray.

Since the use of chemical spray is constitutionally acceptable under *Banks* and *Travillon* and it was only employed after medical clearance and as a measure

of last resort without malicious or sadistic intent to inflict injury entry of summary

judgment is also appropriate under *Fuentes* and *Whitley*.

An appropriate Order follows

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge